KNOLL, Judge.
This appeal concerns quantum and apportionment of fault from a personal injury case. The trial court found Janie Sandidge free from fault and awarded her $275,000, and awarded her passenger daughter, Cindy Adams, $25,000. The Department of Transportation and Development (DOTD) brings this appeal contending the trial court erred in not apportioning fault against Ms. San-didge and in awarding excessive damages. For reasons which follow, we affirm.
FACTS
On April 28, 1991, a system of thunderstorms passed through Concordia Parish. At some point during the day, winds from this weather system blew a tree down across Highway 568, also known as Lake St. John Highway. The Concordia Sheriffs Department notified DOTD of the fallen tree around 5:00 p.m. A DOTD crew was dispatched to the scene shortly afterwards. At some point in cutting up the tree, the DOTD chain saws broke down. A DOTD employee was sent to Harrisonburg to obtain operable saws. During this period the crew of 3 DOTD employees stopped work and sought shelter from the rain in the DOTD vehicles. Two vehicles, a six passenger pickup truck and immediately behind it a larger dump truck, were in the northbound travel lane in front of the fallen tree. The yellow beacon light on top of the cab of the pickup truck was operating, but not on the dump truck. There was still moderate rain falling. At this time, Janie Sandidge and her passenger daughter, Cindy Adams, were returning from work in the northbound direction along Highway 568. At approximately 9:45 p.m. the plaintiffs vehicle collided with the rear of the dump truck. Both Mrs. Sandidge and her daughter were injured with Mrs. Sandidge’s injuries being the more serious.
LIABILITY
DOTD asserts the trial court erred in finding it solely at fault in the accident.
The trial court noted several facts in finding DOTD solely at fault. The crew sat idly at least 45 minutes between the time the saws became inoperable and the accident occurred. During this time, no effort was made to move the dump truck with the inoperable beacon so that the operable beacon on the pickup truck could be seen by approaching northbound traffic. Even more disturbing to the trial court was its finding that the crew had reflective warning signs with them, but made no effort whatsoever to put these signs up to warn the traveling public. As for Mrs. Sandidge’s actions, the trial court found she was neither driving unreasonably fast nor being unreasonably inattentive. The dump truck blocked any direct view of the pickup truck’s beacon light by northbound traffic. In essence, there was no warning to Ms. Sandidge of the parked, unlighted dump truck in the travel portion of the highway dining the rainstorm. In its reasons for judgment, the learned trial court stated:
“It is the opinion of this Court that the DOTD is totally at fault in causing this accident. It is black letter law that the DOTD has a clear duty to maintain highways in a reasonably safe condition and to warn the traveling public of any unusual obstruction in the road. Not only did the DOTD not fulfill their duty, but, in fact, created the offending obstruction in the highway. The duty owed Ms. Sandidge by the DOTD was not only to warn of the tree across the highway once it became aware of that situation but also not to obstruct the traveled portion of the highway.
In the instant case, the dump truck emergency flasher was inoperable. The truck should not have been parked on the traveled portion of the highway especially in the dark and in a rainstorm. The gradeall had been moved from the highway to the west side of the highway. Certainly, the dump truck could have been moved just as easily. Had that been the case, the yellow *562 flasher on the pickup truck would have been clearly visible for traffic coming in either direction. Further, it is simply unconscionable that the reflective signs on the pickup trucks were not placed along the highway at such a distance to give notice to the traveling public of an obstruction in the road ahead.
It is DOTD policy not to use such signs in an emergency situation. The wisdom of that policy shall not be reviewed here. The fact is any emergency situation had long since passed. It is this Court’s opinion the highway crew had been on the scene for well over two hours and had been idle for at least 45 minutes before the accident. During that time they continued to allow DOTD vehicles to block the highway and obstruct the view of the emergency flasher to northbound traffic. Without question, the reflective warning signs should have been distributed along the highway.
In reviewing whether or not Ms. Sandidge was at fault, one should consider if what she did would give rise to fault. She was not driving unreasonably fast, even for the conditions of the weather and the road surface. She was not unreasonably inattentive. She was not operating her vehicle in an unsafe manner. The only fault one could charge against Ms. Sandidge is that she didn’t see the parked vehicle and either safely stop or take evasive action. There was a heavy rainstorm taking place at the time of the accident. The dump truck obscured the view of the flashing yellow beacon. All that could have been seen under favorable weather conditions would have been the reflection of the yellow beacon about the area and possibly the outline of the dump truck. Under the inclement weather conditions that existed at the time of the accident it is doubtful Ms. Sandidge could see reflected light. Ms. Sandidge had a reasonable belief that she would be afforded a clear and unobstructed highway. She was not at fault.”
Our standard of review is clear. Apportionment of fault is a factual matter. The trial court’s findings in this regard should not be disturbed on appeal unless they are clearly wrong or manifestly erroneous. Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672 (La.App. 3rd Cir.1991).
We have carefully reviewed the record and it shows full support for the trial court’s findings. Accordingly, we affirm the trial court’s finding Ms. Sandidge free from fault.
QUANTUM
DOTD contends the trial court erred by awarding excessive damage awards to both Ms. Sandidge and Ms. Adams.
It is well established in our jurisprudence that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Hae Woo Youn v. Maritime Overseas Corp., et al., 623 So.2d 1257 (La.1993).
DOTD makes the classical argument of excessiveness by comparing the general damage awards herein to other jurisprudentially reported injuries and awards. In Youn, our Supreme Court stated:
“In Reck v. Stevens, 373 So.2d 498 (La.1979), this Court commented on appellate review of general damage awards and on the ‘much discretion’ in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion *563 in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the ‘much discretion’ of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is ‘great,’ and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.” (Footnote omitted.)
In fixing all the awards to Ms. San-didge and Ms. Adams, the trial court gave considerable factual bases for its awards in its written reasons, which we incorporate herein:
“Ms. Sandidge suffered substantial injuries, some of which will be permanent. She suffered a fractured right femur which required open reduction and internal fixation. She also had broken bones in her right foot which likewise required open reduction and internal fixation. Further, she had severe lacerations to her forehead and an avulsion laceration of the tip of the nose which required plastic surgery. She also had a laceration to her right knee and muscle and ligamentous strains over most of her body. Shortly after the accident, Ms. Sandidge had surgery which was performed on her right leg and foot, which required the insertion of pins and screws. Subsequent surgery was required to remove a pin and screw.
Her past medical expenses are set at $35,-047.02 and an award of that amount is made to her. It is apparent that she will need further surgery to alleviate the fusion of the second toe of her right foot as well as additional surgery on her right leg in order to aid the bone healing process. It is estimated the cost of both procedures will be $12,690.00 and said amount is awarded as special damages for future medical expenses.
Ms. Sandidge has suffered severe physical and mental pain. The record will reflect that she has lost some of the use of her right lower extremity. She will in all probability require the use of a cane in order to move about. She will not be able to enjoy many of the pastimes and hobbies she had enjoyed. She has suffered and will continue to suffer considerable pain and discomfort. The enjoyment and experience of life will be greatly diminished. Ms. Sandidge is awarded the sum of $275,-000.00 to compensate her for her pain and suffering, disfigurement, and loss of the enjoyment of her life.
It is also clear Ms. Sandidge will not be able to work as a waitress in the future. Based on her education, training and experience, it is doubtful she will be able to find any employment in the future.
Dr. Charles Bettinger, who this Court recognized as an expert in the field of eco *564 nomics and statistics, testified on behalf of Ms. Sandidge. Using figures provided him by Counsel, Dr. Bettinger estimated Ms. Sandidge’s income to be approximately $850.00. Both Ms. Sandidge and Ms. Adams had worked as a waitress at Paul and Randee’s Restaurant prior to the accident. Ms. Sandidge had worked full time for Paul and Randee’s for approximately a year and a half to two years. Ms. Adams had just began working full time after working for several months in a part time position. Both testified they earned in wages and tips between $800.00 and $900.00 per month. Paul Nettles, the owner of Paul and Randee’s testified that a good waitress could earn between $800.00 and $900.00 per month. However, Ms. Sandidge’s W-2 forms would reflect a somewhat less earnings. Her 1991 W-2 form (Exhibit 19) reflects $2,868.13 earnings over the first four months of that year or approximately $600.00 per month. Her total earnings for 1990 was $6,084.23 (Exhibit 18) or a monthly average of slightly over $500.00. Her reported earnings are increasing, and may soon reach the estimated amounts of $800.00 to $900.00 per month. But for the purposes of firing a loss of income, this Court will use an average monthly earnings figure of $700.00 per month for both ladies.
From the date of the accident to the date of the trial, June 19, 1992, approximately fourteen months had passed. Therefore, Ms. Sandidge is entitled to lost wages in the amount of $9,800.00 (14 x $700.00). Ms. Sandidge is also entitled to loss of future earnings. At the time of the trial, Ms. Sandidge was 47 years, 8 months old. She had at that time a work life expectancy of approximately eighteen years or until she would be approximately 65 years old. The Court will use as a discount rate the net below market rate used by Dr. Bet-tinger of 2.5% (the real interest rate above the inflation rate) to determine the present value of her future lost earnings. She is awarded the sum of $120,568.00 for the loss of future earnings ($700.00 per month for 18 years discounted at 2.5%).
In a like manner, this Court is also of the opinion that Ms. Sandidge will incur future expenses to maintain her home, her property, and herself that she would not have incurred had it not been for the accident. These expenses sometimes referred to as non-market services shall be fixed in the following manner. The Court is of the opinion she will incur an additional $200.00 per month expense to provide for these services. Even though her life expectancy from the date of trial is 33.4 years, the Court will allow these services for a period of only 20 years. (At some point in people’s lives they will normally require more help from others in providing non-market services.) Ms. Sandidge is awarded the sum of $53,825.00 to cover those expenses. ($200.00 per month for 20 years discounted at 2.5%)
Ms. Sandidge lives in a rural area. She has and will have to travel long distances to seek medical care. She is therefore awarded $1,000.00 in past and future travel expenses.
Ms. Adams as a guest passenger of Ms. Sandidge’s vehicle also incurred substantial injury. She suffered a laceration to her left thumb which required stitches. She also sustained a scalp laceration on her forehead at the hairline which also required stitches. Further, she had multiple facial abrasions and contusions, a bruised left leg, a concussion with the resulting post-concussion headaches, and various muscle and ligamentous strains to the cervical region of her spine. As a result of the injuries, she was hospitalized from the date of the accident until May 3, 1991. She had to wear a cervical collar for approximately one month after the accident, and it was approximately three months after the accident before she became substantially pain-free. She occasionally has problems with her neck as well as occasional post-concussion headaches.
As a result of the accident, Ms. Adams sustained medical expenses in the sum of $4,864.30 and such is awarded that amount as a portion of her damages. She was unable to work for three months after the accident and is also awarded the sum of $2,100.00 for past lost earnings ($700.00 per month X 3 months). For her physical *565 and mental pain and suffering, Ms. Adams is awarded the sum of $25,000.00 in general damages.
Scott Adams, the husband of Cindy Adams, claims a loss of consortium as a result of the accident. Primarily, Mr. Adams’ claim is based on having to spend more time caring for his children and taking care of his home and Ms. Adams as she convalesced for a period of about six weeks to three months. Also, their sexual activity was impeded for approximately six weeks and that he and his wife’s relationship suffered during that period of time. Mr. Adams is awarded the sum of $2,000.00 for the loss of consortium as a result of this accident.”
We have carefully reviewed the record and find it fully supports the trial court’s findings. Accordingly, the awards for the particular injuries to Ms. Sandidge and Ms. Adams and their effects under the particular circumstances on Ms. Sandidge and Ms. Adams, is not a clear abuse of the great and vast discretion of the trier of fact.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to DOTD in the amount of $1,504.92.
AFFIRMED.