687 So.2d 674 (1997)
Thomas M. FITZGERALD, et ux, Plaintiffs-Appellees and Cross-Appellants,
v.
FILES TIMBER CO., et al., Defendants-Appellants and Cross-Appellees.
No. 29145-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
Writ Denied April 4, 1997.
*676 Usry & Weeks, T. Allen Usry, John F. Weeks, II, Paul E. Mayeaux, for Defendant/First Appellant and Cross-Appellee, Deputy Morgan Perry.
Herman Castete, Lloyd E. Hennigan, Jr., for Plaintiffs/Appellees and Cross-Appellants.
Before BROWN, WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
Defendant Winn Parish Deputy Sheriff Morgan Perry appeals the judgment of the Eighth Judicial District Court finding him to be 20% at fault for the injuries sustained by plaintiffs, Mary Bernice Fitzgerald and her husband, Thomas Fitzgerald. The Fitzgeralds answer the appeal praying that the judgment be affirmed in all respects except the degree of fault allocated to Deputy Perry, which plaintiffs ask be increased through an assignment of error. Finding that the trial judge's assignment of 20% of the fault to Deputy Perry was erroneous, we reverse.

FACTS
On the evening of December 8, 1991, Mary Bernice Fitzgerald, plaintiff/appellee and also cross-appellant herein, was involved in a one-vehicle accident on Louisiana Highway 126 between Grayson and Sykes in Winn Parish. At approximately 8:00 p.m., Mrs. Fitzgerald was driving westbound on Highway 126 at an estimated speed of forty to forty-five miles per hour. Mrs. Fitzgerald came over the top of a hill, and, on the downhill side, encountered slippery, wet mud coating the highway. Her pick-up truck left the roadway, veered into a ditch on the northern side of the highway and ultimately struck a tree. Mrs. Fitzgerald suffered severe, life threatening injuries which required emergency surgery.
In the area of the accident, Highway 126 is a two-lane, undivided, black-top highway running east to west through hilly and curvy terrain. The accident occurred in a relatively low-lying area between two hills. The cause of Mrs. Fitzgerald's accident was mud deposited on the highway, which had become more slick as a result of rain that had begun earlier in the day and continued through the time of the accident. The mud had been tracked onto the roadway by vehicles belonging to Files Timber Company, a logging company, which had completed logging operations on property adjacent to the scene the day before the accident.
Approximately two hours before Mrs. Fitzgerald's accident, Winn Parish Deputy Sheriff Morgan Perry had been dispatched to the scene by the Winn Parish Sheriff's Department.[1] Deputy Perry initially approached the area from the west and traversed the area from hill to hill, returning to the west end. He testified that he observed mud on the road. He further testified that he saw a yellow and black "Mud on Road" sign approximately eighteen inches square and posted approximately two feet off the ground on the eastern hill "on the back side of the hill from the mud." Reasoning that this sign would possibly warn westbound travelers, Deputy Perry elected to place his vehicle at the top of the western hill, which was unmarked, to serve as a warning to eastbound motorists.
*677 Having determined that the mud on the highway created a hazardous condition, Deputy Perry called the Winn Parish Sheriff's Office dispatcher and requested that she call and inform the Department of Transportation and Development ("DOTD") that warning signs were needed in the area. He told the dispatcher that he would stay at the site until the DOTD crew arrived with the signs. At 6:32 p.m., Mr. Billy Gorham, an employee of DOTD at the time of the accident, was advised by the Sheriff's Office that signs were needed in the area. Mr. Gorham testified that when he received the call, the DOTD crew was working on a bridge in Gansville, approximately 30-35 miles away from the accident site. Mr. Gorham told his crew that when they finished the Gansville job, they were to pick up signs and take them to the muddy area of Highway 126. The crew continued to work at the Gansville site for approximately an hour and a half to two hours. After completing the Gansville job, the DOTD crew called the Sheriff's Office and were told signs were needed. The crew then picked up signs and took them to the accident site. Mr. Gorham was aware that, due to the work in Gansville, the crew's response to the Sheriff's Office request for signs would be somewhat delayed. The record contains no evidence, however, that Deputy Perry was ever informed by the dispatcher or DOTD that the crew's arrival with the signs would be delayed.[2]
Deputy Perry remained at the scene for at least 45 minutes at which point, for reasons stated later in this opinion, he traveled one mile to a church where he performed a security check. Deputy Perry later returned to the site. During his absence from the scene, Mrs. Fitzgerald's accident occurred.[3]
On January 17, 1992, in the Eighth Judicial District Court for Winn Parish, Mrs. Fitzgerald filed a petition seeking damages for her injuries and losses. Her husband, Thomas, joined as a plaintiff, seeking damages for loss of consortium. Initially named as defendants were Files Timber Company and Riverwood International Corporation, alleged to be the owner of the land where Files Timber had been conducting its operations. A number of supplemental and amending petitions followed. Of importance to the present appeal is an amended petition filed on August 20, 1993, which first named as a defendant Morgan Perry, a Winn Parish Deputy Sheriff, who is the sole original appellant and cross-appellee herein. Plaintiffs alleged that Perry, along with the other defendants, was liable for Mrs. Fitzgerald's damages because he was aware of the dangerous highway conditions before the accident but nevertheless "left the scene unprotected." This amended petition also added the State of Louisiana, Department of Transportation and Development ("DOTD"), as a defendant, alleging that it had been given notice of the dangerous condition of this state highway, but took no action to either clean the roadway or to provide warnings of its condition.
Before a bench trial commenced on March 8, 1995, the plaintiffs reached a settlement with, and dismissed, all defendants in the case except Deputy Perry. On February 28, 1996, the trial judge signed written Reasons for Judgment. He found Deputy Perry twenty (20%) percent at fault and assessed the remaining eighty (80%) percent of the fault to settling defendant Files Timber Company. No fault was assessed to plaintiff Mrs. Fitzgerald. In accordance with his findings, the trial judge awarded judgment against Deputy Perry for $104,017.40, which is 20% of $520,087.03, the full assessment of damages. Judgment was also awarded against Deputy Perry for 20% of all costs, including expert witness fees.

DISCUSSION
Deputy Perry appeals the trial court's judgment, assigning the following six assignments *678 of error: (1) the trial court erred in admitting into evidence a deposition given by Deputy Perry; (2) the trial court erred in its characterization of the nature and extent of the legal duty Deputy Perry owed motorists such as Mrs. Fitzgerald; (3) the trial court erred in finding that Deputy Perry breached any duty owed Mrs. Fitzgerald; (4) the trial court erred in finding any act or omission of Deputy Perry was a cause in fact of Mrs. Fitzgerald's injuries; (5) the trial court erred in allocating 20% of the fault to Deputy Perry; and (6) the trial court erred in allocating no fault to Mrs. Fitzgerald. The Fitzgeralds also appeal, assigning as error the trial court's inadequate apportionment of fault to Deputy Perry.
The standard negligence analysis we employ in determining whether to impose liability under La.C.C. art. 2315 is the duty/ risk analysis, which consists of the following four-prong inquiry:
I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
II. Did the defendant(s) owe a duty to the plaintiff?
III. Was the duty breached?
IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318.
Under a duty/risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. As such, in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Mathieu v. Imperial Toy Corporation, supra.
Cause-in-fact is generally a "but for" inquiry, which requires plaintiff to show he would not have sustained injury but for the defendants' conduct. Roberts v. Benoit, 605 So.2d 1032 (La.1991); Vig v. City of Shreveport, 28,530 (La.App.2d Cir. 8/21/96), 679 So.2d 524. Under a duty-risk analysis, each inquiry must be affirmatively answered in order for plaintiff to recover. Mathieu v. Imperial Toy Corp., supra; Vig v. City of Shreveport, supra.
In this case, the plaintiffs allege that Deputy Perry breached a duty owed to motorists such as Mrs. Fitzgerald by the following acts or omissions: (1) setting up a warning on only one side of the hazardous condition; (2) failing to request assistance; and (3) failing to remain on the scene.
Whether a duty exists is a question of law, but whether the duty is breached is a question of fact. Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993); Crigler v. Crigler, 28,085 (La. App.2d Cir. 4/3/96), 671 So.2d 1199. A law enforcement officer having knowledge of a hazardous traffic condition not obvious to the public is under a duty to use reasonable efforts to protect against the dangerous situation. Syrie v. Schilhab, 94-957 (La.App.3d Cir 3/27/96), 679 So.2d 143, citing Duvernay v. State Through Dept. of Public Safety, 433 So.2d 254 (La.App. 1st Cir.1983), writ denied 440 So.2d 150 (La.1983). We find that once Deputy Perry became aware that the mud on the highway created a hazardous situation, he was under a duty to use reasonable efforts to protect motorists against the hazardous situation.
Having determined that a duty existed, we next examine the factual question of whether a breach occurred. The first allegation of breach by Deputy Perry is his setting up a warning on only one end of the hazardous area of the roadway. An officer is held to choosing a course of action which is reasonable under the circumstances. Mathieu v. Imperial Toy Corp., supra. The plaintiffs argue that Deputy Perry breached his duty to make reasonable efforts to protect motorists *679 by setting up a warning on only one end of the hazardous area. As noted above, the section of the highway where the accident occurred lies between two hills. Deputy Perry chose to park his vehicle on top of the unmarked hill in an attempt to provide a warning to motorists. This choice to park the vehicle on the unmarked hilltop was clearly a reasonable course of action. For Deputy Perry to have driven back and forth in an attempt to provide warning at both hilltops would have been both ineffective and dangerous. He would have been less likely to be visible to approaching motorists while his vehicle was in the low area between the two hills and would have potentially created an even greater hazard to himself and other motorists by repeatedly driving through the slippery, muddy area. Deputy Perry testified that because the eastern hill had a small warning sign and no such sign was present on the western hill, he, therefore, chose to park his vehicle on the western hill to alert eastbound motorists to the dangerous condition. Given the presence of a sign on the eastern hill and no sign on the western hill, Deputy Perry's choice of the western hill was clearly a reasonable one under the circumstances. No breach of his duty was committed by Deputy Perry in choosing to park his vehicle on the western hilltop.[4]
The second alleged breach by Deputy Perry is his failure to request assistance. As discussed earlier in the opinion, after Deputy Perry arrived at the site and determined a hazardous condition existed, he called the dispatcher at the Sheriff's Office and requested she call DOTD to bring warning signs to the area. Deputy Perry did, therefore, request assistance in warning the public of the hazardous situation.
The third alleged breach by Deputy Perry is his failure to remain on the scene. Deputy Perry's testimony indicates that as he sat in his vehicle on the western hill, his engine began to overheat. He further stated that to have turned off his engine and run only the flashing bar lights would have caused the battery in his vehicle to wear down. Deputy Perry testified that due to the difficulties he was experiencing with his vehicle, he decided to leave the site and perform a security check on the nearby church. Since we find that his absence from the scene was not a cause-in-fact of Mrs. Fitzgerald's injuries, we pretermit discussion of whether his leaving the scene constituted a breach.
Regarding the allegation that Deputy Perry's absence from the scene was a cause-in-fact of Mrs. Fitzgerald's accident, the plaintiffs presented no evidence to substantiate this claim. Deputy Perry presented the only testimony at trial concerning a westbound motorist's ability to see a vehicle stationed at the top of the western hill. He testified that from the top of the eastern hill, a person could not see his vehicle where it had been stationed on the western hill. Plaintiffs presented no proof that, had Deputy Perry remained at the top of the western hill, his vehicle or warning lights would have been visible to Mrs. Fitzgerald as she topped the eastern hill. Similarly, no evidence was presented that had she seen the vehicle or lights as she topped the hill at forty to forty-five miles an hour, she would have been alerted in time to take any preventive action, because she encountered the muddy section of the road as soon as she came over the hill. Given the lack of evidence that Deputy Perry's presence on the western hill would have allowed Mrs. Fitzgerald an opportunity to avoid the accident, the fact that Deputy Perry left the site is of no moment. Plaintiffs did not prove that "but for" Deputy Perry's leaving the scene, Mrs. Fitzgerald would not have sustained her injuries; therefore, Deputy Perry's failure to remain at the site was not a cause-in-fact of Mrs. Fitzgerald's injuries.
A negative answer to any of the inquiries of the duty/risk analysis results in a determination of no liability. Mathieu, supra. We have determined that no breach occurred in Deputy Perry's parking his car on the western *680 hilltop or in his failing to request further assistance. We have likewise determined that Deputy Perry's failure to remain on the scene was not a cause-in-fact of Mrs. Fitzgerald's injuries. Deputy Perry, therefore, cannot be found liable for Mrs. Fitzgerald's injuries and we need not consider the remaining questions in the duty/risk analysis or the remaining assignments of error.

CONCLUSION
For the foregoing reasons, we reverse.
REVERSED.
NOTES
[1] Earlier on the day of Mrs. Fitzgerald's accident, a separate, unrelated one-vehicle accident had occurred at the same site. At approximately 12:20 p.m., Ms. June Hatten lost control of her vehicle due to the mud on the highway. Ms. Hatten's vehicle left the roadway and came to rest in the ditch. As soon as she reached Winnfield, Ms. Hatten called the Winn Parish Sheriff's Department to report the mud on the highway.
[2] Plaintiffs' brief suggests that the Winn Parish Sheriff's Department was negligent in its delayed response to Ms. Hatten's call and in various other acts and omissions. We note that the Winn Parish Sheriff's Department was never made a party in this action; therefore, our examination is limited to whether Deputy Perry was negligent for his own individual acts and omissions.
[3] Deputy Perry's testimony was conflicting regarding how long he remained on the scene before leaving to perform the security check and how long he remained away from the scene. The length of time he remained away from the site was disputed.
[4] Some witnesses testified they did not see a sign on the eastern hill. Even assuming, arguendo, that no sign was present, our analysis would not be altered. If Deputy Perry was forced to chose between two unmarked hills, under the circumstances of this case, his choice to park on the western hill was reasonable.