709 So.2d 890 (1998)
Margie Faye VARNELL, et al., Plaintiffs-Appellees,
v.
LOUISIANA TECH UNIVERSITY, et al., Defendants-Appellants.
No. 30260-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*891 William James Staser, LaVon Denise Raymond, Baton Rouge, for Defendants-Appellants.
Paul Boyd Wilkins, Gregory Lee Lewellyan, Columbia, for Plaintiffs-Appellees.
Before NORRIS, BROWN and PEATROSS, JJ.
NORRIS, Judge.
Louisiana Tech University and the Board of Trustees for State Colleges and Universities appeal a judgment finding them 100% at *892 fault in a slip and fall that injured the plaintiff, Margie Faye Varnell, and awarding Mrs. Varnell and her husband $576,454.47 in damages. The defendants (hereinafter, "the State") contest the allocation of fault as manifestly erroneous and two items of damage as duplicating other elements of recovery. We amend the judgment to find the State only 75% at fault, but in all other respects affirm.

Factual and procedural background
This case has been before us on a prior occasion; we reversed and remanded because of the improper imposition of a discovery sanction. Varnell v. Louisiana Tech Univ., 28,266 (La.App.2d Cir. 4/3/96), 671 So.2d 1238. We will restate the facts as they appeared in that opinion, with minor changes.
Pamela Varnell is the daughter of the plaintiff, Margie Faye Varnell ("Mrs.Varnell"). Pamela and her roommate, Hyun McLemore, were students at Louisiana Tech in the summer of 1991, living in Room 418 of Kidd Hall, a campus dormitory. In mid-June, water began leaking from the air conditioning unit in their room. Pamela and Hyun notified their residence assistant, Shelly McCullough, of the problem several times. Each wrote her name, room number, and "leaking air conditioner" on the bulletin board outside the R.A.'s door. Pamela also testified that she verbally reported the problem to the R.A. several times. The school's maintenance personnel twice attempted to repair the leak, but water resumed dripping within 48 hours of each repair.
The air conditioner was located over the sink; the dripping water ran down the wall to the sink counter and onto the floor. In order to catch and absorb the dripping water, Pamela and Hyun placed large plastic cups and towels on the floor. They testified that the water leaked so profusely that they needed to empty the cups and change the towels two or three times each day. When the room was unoccupied for an extended period, water puddles would form on the floor.
On Thursday, August 8, 1991, Pamela left the dorm to visit her parents at home in Grayson, and returned on Sunday, accompanied by her mother. Hyun was also away for the weekend. Pamela entered the room, noticed phone messages on her answering machine, and immediately sat on her bed to listen to the messages. Mrs. Varnell, who had stopped in the doorway and was holding two bags of groceries, started to walk toward Hyun's bed to set down the bags. After a step or two, however, she slipped in accumulated water on the floor. She fell and injured her right knee.
Pamela and her mother went to the R.A.'s room and reported again that the air conditioner in Room 418 needed repair and that Mrs. Varnell had fallen and hurt her leg. The next day, Pamela spoke with Mr. King, the director of housing and residential life. She related the ongoing problem with the leaking unit, the failed repairs, and the accident. Within one hour of this conversation, maintenance personnel repaired the leak.
Mrs. Varnell sought medical attention for her injury in February 1992, almost six months after the accident. Shortly thereafter, her orthopedic surgeon (who became her treating physician), Dr. Baer Rambach, performed arthroscopic surgery to repair damage in Mrs. Varnell's right knee. He monitored her until January 1993, when he released her to return to work with a 25% permanent partial disability in her knee. She returned to him, however, because of persistent pain and swelling in the right knee, as well as pain in the left knee from overwork. In September 1993, Dr. Rambach performed incisional surgery to correct hyper mobility and moderate-to-severe chondromalacia of her left kneecap.
Mr. and Mrs. Varnell filed the instant suit in July 1992, alleging that the State was negligent and strictly liable for the injuries they had sustained. They named Pamela as a defendant. The State answered and filed a third party demand against Pamela, urging that she was responsible for all or part of any damages because she failed to warn her mother of a dangerous condition.
The first trial was held in November 1993. The Varnells filed a motion in limine to exclude defense witnesses' testimony on grounds that the State had not provided the names and addresses of their witnesses until *893 six days before trial. The District Court excluded from evidence those witnesses and their exhibits, and ultimately rendered judgment holding the State was liable for all injuries, and fixing damages at $551,454.47 for Mrs. Varnell and $25,000 for Mr. Varnell.[1] As noted, this court reversed and remanded on a finding that the exclusion of all defense evidence was an unwarranted sanction for the discovery violation. Varnell v. Louisiana Tech Univ., supra.
At the second trial, in November 1996, the State presented the live testimony of an expert economist and various documentary evidence. Without stating additional reasons, the District Court in January 1997 re-rendered its original judgment. The State has appealed.

Applicable law
Liability in slip and fall cases is normally based on strict liability, La. C.C. art. 2317,[2] negligence, La. C.C. art. 2315,[3] or both. Fontenot v. Fontenot, 93-2479 (La.4/11/94), 635 So.2d 219; Choyce v. Sisters of the Incarnate Word, 25,958 (La.App.2d Cir. 8/19/94), 642 So.2d 287, writ denied 94-2510 (La.12/9/94), 647 So.2d 1119. A strict liability claim requires a showing that the premises which caused the accident were in the care, custody or control of the defendant, that the premises had a vice or defect which created an unreasonable risk of harm, and that the plaintiff's damages were caused by the vice or defect. Fontenot v. Fontenot, supra. When the owner or custodian of the premises is a public entity, the plaintiff must additionally show that the defendant had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and a reasonable opportunity to remedy the defect but has failed to do so. La. R.S. 9:2800 B; Maxwell v. Board of Trustees, 96-1207 (La.App. 3d Cir. 3/19/97), 692 So.2d 641, writ denied 97-0996 (La.6/13/97), 695 So.2d 987.
A negligence claim requires a showing that the defendant had a duty to conform her conduct to a specific standard, that she failed to conform her conduct to that standard, that her conduct was the cause in fact and a legal cause of the plaintiff's injuries, and that the plaintiff incurred damages as a result. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305; Fitzgerald v. Files Timber Co., 29,145 (La.App.2d Cir. 1/22/97), 687 So.2d 674, writ denied 97-0467 (La.4/4/97), 692 So.2d 419. In a slip and fall claim based on negligence, the defendant's awareness of the dangerous condition of the premises gives rise to a duty to act. Oster v. Department of Transp. & Dev., 582 So.2d 1285 (La.1991); Maxwell v. Board, supra. The duty may be to warn third persons of the hazard. See, e.g., Stevens v. Winn-Dixie of La., 95 0435 (La.App. 1st Cir. 11/9/95), 664 So.2d 1207; Carr v. City of New Orleans, 626 So.2d 374 (La.App. 4th Cir.1993), writ denied 94-0062 (La.3/11/94), 634 So.2d 398.
The trial court's allocation of fault is subject to the manifest error rule. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607; Hickman v. Exide Inc., 28,495 (La.App.2d Cir. 8/21/96), 679 So.2d 527. Under this rule, the court of appeal will not disturb the trial court's findings unless the record does not provide a reasonable factual basis for those findings and the court of appeal determines that the findings are clearly wrong or manifestly erroneous. Stobart v. State, 617 So.2d 880 (La.1993). In assessing comparative fault, courts consider (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was *894 sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm, 469 So.2d 967 (La.1985); Socorro v. City of New Orleans, 579 So.2d 931 (La. 1991).
Non-market services are an element of damages representing expenses to maintain the plaintiff's home, property and self, which would not be incurred but for the plaintiff's injury. Sandidge v. State, 626 So.2d 560 (La.App. 3d Cir.1993); Maxwell v. Board, supra. Louisiana law has long permitted recovery of reasonable and necessary expenses incurred to obtain domestic help which is usually performed by one of the spouses. Edwards v. Lewis Grocery Co., 391 So.2d 13 (La.App. 2d Cir.1980), and citations therein; Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App.2d Cir. 5/10/95), 661 So.2d 503. The cost to the uninjured spouse of replacing the injured spouse's household services is sometimes considered an element of the uninjured spouse's loss of consortium. See, e.g., Miller v. Keal, 29,564 (La.App.2d Cir. 5/7/97), 694 So.2d 569; Andrus v. Board, 626 So.2d 1224 (La.App. 3d Cir.1993). On a sufficient showing, both may be awarded. Andrus v. Board, supra; Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3d Cir.1988).
In the assessment of general damages, the trial court has great discretion. La. C.C. art.1999; Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993). Loss of enjoyment of life may be included within the award of general damages for pain and suffering, but it does not necessarily duplicate that award. Richard v. Teague, 92-17 (La.App. 3d Cir. 5/4/94), 636 So.2d 1160, writ denied 94-1934 (La.11/11/94), 644 So.2d 388; Smith v. Juneau, 95-0724 (La.App. 4th Cir. 4/9/97), 692 So.2d 1365.

Discussion: Finding of fault
By its first assignment of error the State urges the District Court erred in failing to find Pamela Varnell at fault in causing her mother's injuries and failing to reduce the State's percentage of fault proportionately. In support the State shows that Pamela had complete knowledge of the hazardous condition, having reported the leak to the R.A. on several occasions and taken steps to minimize the puddling on the dorm floor, and admitted that she considered the condition dangerous. Despite this knowledge, Pamela did not warn her mother of the condition and the hazard as she walked across a wet floor in a room she had never seen before.
The Varnells urge in brief that the State has premises liability under art. 2317 and was negligent for failing to repair the leak despite Pamela's numerous requests. They contend, in essence, that the District Court was not plainly wrong to find the State entirely at fault.
This record clearly and unequivocally shows Pamela's knowledge of the leak, the puddle, and the resulting hazard. She and her roommate testified that the air conditioner had been leaking for almost two months. In an effort to catch the dripping water, they placed two or three 32-ounce cups on each side of the sink and five or six such cups on the floor, together with towels; even with these precautions, Pamela admitted, puddles formed several times a week. She described the wet floor as "slippery." Although her prior complaints had either been unanswered, or the attempted repairs were ineffectual, she implausibly "assumed" that on this particular weekend, someone would repair the unit. She also did not breathe a word about the problem to her mother until she heard the "squish" of Mrs. Varnell's shoe in the water.
A reasonable person with Pamela's knowledge of the condition and the hazard it posed owes a duty to warn her guest who is entering the premises for the first time. On this record, the District Court was plainly wrong not to find Pamela at fault for failing to warn her mother of the danger.
This finding requires us to compare the parties' fault using the guidelines of Watson v. State Farm and Socorro v. New Orleans, supra. Both the State and Pamela had full awareness of the dripping water and the danger it created. The capacities of the *895 parties, however, are unequal; the State, through the school's technicians, had the power and authority to repair the problem, while Pamela did not. All she could do was complain. The repeated failure to make repairs, despite these complaints, weighs heavily against the State. The significance of what was sought by the Stateproviding a safe living environment for its Louisiana Tech studentsis great, and the burden of actually repairing the problem was small, as this occurred immediately, and with apparently little effort, after Mrs. Varnell spoke to Mr. King. The State's inaction endangered Pamela, Hyun, and anyone else they might have in the room. Finally, despite the State's reprehensible conduct in failing to make repairs (which obviously influenced the District Court's allocation of fault), we note that the condition, though dangerous, was not a trap; a suitable, brief warning from Pamela would surely have averted Mrs. Varnell's fall and subsequent injuries.
Applying the Watson factors to this evidence, we find that the lowest degree of fault the District Court could reasonably assess to Pamela is 25%. Clement v. Frey, supra. Judgment will thus be rendered fixing the State's liability at 75%.

Non-market services
By its second assignment the State urges the District Court erred in awarding "excessive and duplicative unproven damages" for non-market services. Notably, the State does not allege or argue that any particular item of damages is excessive, only that certain items overlap. We therefore express no opinion as to whether any of the items awarded was an abuse of discretion. The thrust of the State's argument is that Mrs. Varnell is not truly disabled from performing substantially all her former household duties; in support it cites a portion of Dr. Rambach's deposition. The State further argues that even if she is so disabled, the award of non-market services duplicates the element of Mr. Varnell's loss of consortium based on loss of material services.
Although the State contends in brief that Dr. Rambach restricted Mrs. Varnell only from household activities "associated with climbing," the doctor actually said she should not engage in "work where she would have to squat, stoop or bend[.]" Dep., 42. He also predicted "pain, swelling, progression of arthritis, * * * degenerative wear and tear arthritis," and estimated "at least a 30% permanent-partial physical impairment and loss of physical function of that knee." Id., 43, 45. On cross examination Dr. Rambach explained that restrictions on Mrs. Varnell's activity were intended not only to avoid pain but minimize future complications. Id., 65. Mrs. Varnell testified that she cannot stoop, squat or do the chores; her husband corroborated this. On the record presented, the District Court was not plainly wrong to find that Mrs. Varnell can no longer perform substantially all her former household duties.
The State further contends that Mr. Varnell's award for loss of consortium must have included an element of lost household services, and thus the award to Mrs. Varnell for non-market services is a double award. However, on a sufficient showing that both types of loss were sustained, courts will affirm both awards. Morris v. Highlands Ins. Co., supra; Andrus v. Board, supra. Mr. Varnell testified that the couple's sexual relations have virtually ended; they no longer go squirrel hunting, and seldom go camping, together; and Mrs. Varnell misses many of the younger children's school activities. The loss of society, companionship, sexual relations, aid and assistance will justify Mr. Varnell's award. See Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). He also testified that because of his wife's condition, he has performed many household chores, and many remain undone. He added that the family has not actually hired a maid because they were financially unable to do so; this is not contradicted. Dr. Charles Bettinger, an expert economist from McNeese State University, projected the replacement cost of Mrs. Varnell's non-market services at $39,664.
On this record, the award of $35,000 in special damages for loss of non-market services is not plainly wrong, and does not duplicate the award of $25,000 to Mr. Varnell for loss of consortium. This assignment lacks merit.

*896 Loss of enjoyment of life

By its third assignment the State urges the District Court awarded duplicative damages by awarding loss of enjoyment of life in addition to general damages for past and future physical and mental pain and suffering. Again, the State does not discuss the evidence or contend that the general damages are excessive, but it cites Koepp v. Sea-Land Service Inc., 93-2562 (La.App. 4th Cir. 11/17/94), 645 So.2d 1269, for the proposition that loss of enjoyment of life will always duplicate the award of general damages.
We note initially that the Fourth Circuit has limited the holding of Koepp to cases involving maritime personal injury under federal law. See Smith v. Juneau, 95-0724 (La.App. 4th Cir. 4/9/97), 692 So.2d 1365. Generally, courts review the entire record to see if it supports both elements of the award. Smith v. Juneau, supra; Richard v. Teague, supra; State v. Southern Baptist Hosp., 94-2228 (La.App. 4th Cir. 10/12/95), 663 So.2d 443, writ denied 95-2751 (La.1/26/96), 666 So.2d 676. The District Court is vested with great discretion in fixing general damages. La. C.C. art.1999; Hae Woo Youn v. Maritime Overseas Corp., supra.
Mrs. Varnell testified that as a result of her injuries, she has no more sexual relations with her husband, can no longer engage in outdoor activities, play with her youngest daughter, or participate in school functions. Since the second surgery, she has gone through periods of time when she could not walk, and was confined to a wheelchair. We cannot say the District Court erred in viewing this evidence as loss of enjoyment of life. She also testified that with her physical limitations and poor prognosis, she does not see that she has "much of a future."
Taken as a whole, the record supports the District Court's award of damages for loss of enjoyment of life as a separate element from the rest of the general damages. La. C.C. art.1999; Hae Woo Youn v. Maritime Overseas Corp., supra. We perceive no abuse of discretion, and this assignment lacks merit.

Conclusion
For the reasons expressed, the judgment is amended to reflect only 75% fault on the part of the defendants, Louisiana Tech University and the Board of Trustees for State Colleges and Universities, but is in all other respects affirmed. Judgment is rendered in favor of Mrs. Varnell for $413,590.85, representing 75% of her damages, and in favor of Mr. Varnell for $18,750.00, representing 75% of his damages, against Louisiana Tech University and the Board of Trustees for State Colleges and Universities. Both sums bear legal interest from date of judicial demand until paid. Costs here and below are assessed 75% to the defendants cast in judgment and 25% to the plaintiffs.
AMENDED AND AFFIRMED.
BROWN, J., concurs with written reasons.
BROWN, Judge, concurring.
When the record provides a reasonable factual basis for the trial court's allocation of fault, that finding may not be disturbed by a reviewing court. The majority described the state's conduct in failing to respond and make repairs as "reprehensible." Further, Mrs. Varnell entered the room for the first time loaded with two bags of groceries and slipped. The trial court found that Mrs. Varnell's daughter, who was a student and required by school policy to live on campus, was not at fault. A reasonable factual basis exists for the trial court's allocation of fault. Although disagreeing on this one point, I concur in the opinion.
NOTES
[1] Mrs. Varnell's damages were itemized as follows: physical pain and suffering, $125,000; mental anguish, $75,000; permanent disability, $50,000; loss of enjoyment of life, $50,000; scarring, $25,000; past medical expenses, $17,871.47; future medical expenses, $15,000; loss of non-market services, $35,000; past lost wages, $8,583; lost earning capacity, $150,000. Mr. Varnell's award was for loss of consortium.
[2] Article 2317 provides, in pertinent part: "We are responsible, not only for the damage occasions by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
[3] Article 2315 provides, in pertinent part: "Every act of man that causes damages to another obliges him by whose fault it happened to repair it."