626 So.2d 1224 (1993)
Ernestine and Curtis ANDRUS, Plaintiffs-Appellants,
v.
Rodger BOARD and the City of Lake Charles, Defendants-Appellees/Appellants.
No. 93-253.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1993.
*1225 Russell T. Tritico, Lake Charles, for Ernestine Andrus, et ux.
Christopher E. John, Lake Charles and M. Rebecca Pierrotti, Kinder, for Rodger A. Board, et al.
Charles V. Musso Jr., Lake Charles, for Farm Bureau Ins. Co.
Before DOMENGEAUX, C.J., and LABORDE and COOKS, JJ.
DOMENGEAUX, Chief Judge.
Ernestine Andrus filed suit for injuries sustained when her vehicle was rear-ended by Rodger Board while he was in the course and scope of his employment with the City of Lake Charles. Her husband Curtis Andrus also filed a claim for loss of consortium. After a bench trial, the trial court awarded damages as follows: to Mrs. Andrus, $48,452.00 for two years past lost wages and $20,000.00 for general damages and medical expenses; to Mr. Andrus, $1,500.00 for loss of consortium.
The Andruses have appealed, alleging the following assignments of error:
1. The total sum awarded for Mrs. Andrus' pain, suffering and medical expenses was unreasonably low;
2. The trial court should have awarded a sum for future medical care;
3. The trial court should have awarded a sum for future lost wages; and
4. The sum awarded to Curtis Andrus for loss of consortium was unreasonably low.
The City of Lake Charles and Rodger Board have also appealed, arguing that the award for past lost wages far exceeds any amount supported in the record.
Because we find merit to arguments raised by both sides of this controversy, the judgment in favor of plaintiffs is affirmed as amended below.

FACTS
On October 5, 1989, Mrs. Andrus was stopped on the off-ramp of I-210 waiting to merge with traffic on Legion Street in Lake Charles when she was rear-ended by Rodger Board. Defendants have not appealed the trial court's finding that Mr. Board was 100% at fault in this accident.
Mrs. Andrus exhibited signs of injury at the scene of the accident. She testified that she experienced a "gray out" and developed a severe headache, with cramping and pain in her hands and arms. Mrs. Andrus, who was 41 at the time of the accident, was born *1226 without a left leg. She wore a prosthesis for this congenital deformity, and she also suffered from mild scoliosis, or curvature of the spine. Four days after the accident she was treated and released at St. Patrick's Hospital emergency room.
The next day, October 10, 1989, she was seen by Dr. Lynn Foret, an orthopedist, who treated her through February 2, 1990. At the first office visit, Dr. Foret noted that Mrs. Andrus had tenderness along her entire spine with "trigger point" areas in the lower back. To alleviate spasm in her lower back, he gave her an injection and prescribed medication. Throughout her treatment with Dr. Foret, Mrs. Andrus complained of back pain and headaches. A CT scan performed on October 24, 1989 revealed a mild disc protrusion at L5-S1. An EMG was negative. Dr. Foret believed Mrs. Andrus was suffering from a muscular-ligamentous injury with right-sided sciatica, numbness in the foot and headaches. Her complaints were chronic and were treated with trigger point injections, medication and physical therapy. Dr. Foret did not believe Mrs. Andrus was a malingerer. He noted that with her congenital deformity and pre-existing scoliosis, she was predisposed to back problems.
Dr. Foret then referred Mrs. Andrus to another orthopedist, Dr. Dale Bernaur. On the six visits made to Dr. Bernaur, Mrs. Andrus had complaints of headaches, numbness in her arms extending to the little and ring fingers, back pain and right leg pain. Dr. Bernaur noted that her complaints went along a dermatonal pattern, although her testing results were negative. He diagnosed her condition as cervical and lumbar strain, with a possible neurological component. He then referred her to a neurologist.
On May 25, 1990, Mrs. Andrus began treatment with Dr. Stephen Inbody, a neurologist at the Baylor College Department of Neurology. Mrs. Andrus was complaining of headaches, numbness, and involuntary contractions of the hand, also known as dystonia, and lumbosacral pain which radiated down her right leg to her right foot. Dr. Inbody noted a soft tissue trigger point, or a "knot," in her neck. His diagnosis was myofascial syndrome, or tissue scarring, and he did not rule out the possibility of a pinched nerve. Believing her soft tissue injuries to be significant, he referred her to a trigger point specialist, Dr. Paul Loubser, for a series of steroid injections.
Dr. Inbody estimated that Mrs. Andrus would need approximately four or five treatments from Dr. Loubser. At the time of trial, she had had two such injections. Dr. Loubser's notes indicated that Mrs. Andrus derived some benefit from the injections.
In his deposition taken four months before trial, Dr. Inbody stated that Mrs. Andrus' myofascial problems were chronic and that such condition "never really goes away." Rather, patients need to refrain from those activities which aggravate the condition.
At defendants' request, Mrs. Andrus was also examined by Dr. Leon Weisberg, Director of the Department of Neurology at Tulane University. Before examining Mrs. Andrus, Dr. Weisberg reviewed her medical records and history and concluded that he disagreed with any prior diagnosis insofar as it suggested damage to the spinal cord. However, after examining Mrs. Andrus on September 25, 1991, Dr. Weisberg found objective evidence which corroborated Dr. Inbody's diagnosis of myofascial syndrome. Approximately two years post accident and three months prior to trial, Dr. Weisberg observed paraspinal muscle spasm of the lower back with some loss of the lumbar lordosis. In the cervical area, he also observed a "knot" in the back of her neck as well as tenderness and an impaired cervical lordosis. He noted multiple tender points over the cervical, thoracic and lumbar spine that were consistent with the prior diagnosis of myofascial syndrome. He believed her prior treatment had been appropriate, although he did not find any improvement. As of that date, he believed Mrs. Andrus to be incapable of returning to school or to work. He stated that she was in need of aggressive treatment for her disorder.
In written reasons for judgment, the trial court found that Mrs. Andrus had proved that as a result of the accident she suffered a soft tissue injury which also produced symptoms of headaches and involuntary cramping *1227 in her hands. The court found that she was disabled from gainful employment from the date of the accident until the date of trial. The court also found that her symptoms had gradually diminished over time and that she was not entitled to an award for future medical expenses or future lost wages.

SPECIAL DAMAGES

a. Future Medical Expenses
The trial court's failure to award future medical expenses was based on its finding that Mrs. Andrus' medical problems had resolved by the date of trial. After reviewing the medical and lay testimony in the record, we are forced to conclude that this finding is manifestly erroneous.
In reaching this conclusion, we rely upon the striking similarity in the testimony of Dr. Inbody, the plaintiffs' treating physician, and Dr. Weisburg, who examined Mrs. Andrus at defendants' request. Three months prior to trial, both physicians found objective evidence to support the diagnosis of myofascial syndrome. Both were of the opinion that Mrs. Andrus was not functional as of that date and that she needed continuing medical care. Their testimony as to Mrs. Andrus' condition at that time was uncontradicted. We find nothing in the record that supports the trial judge's conclusion that Mrs. Andrus had recovered as of the date of trial.
Drs. Inbody and Weisberg agreed that the trigger point injections, as administered by Dr. Loubser, were an appropriate treatment. Dr. Weisberg thought that Mrs. Andrus should still be aggressively treated. Dr. Inbody testified the treatment with Dr. Loubser should consist of approximately five injections. As of the date of trial, Mrs. Andrus had two injections. Accordingly, we will award Mrs. Andrus future medical expenses of $3,000.00 to cover the cost of three more injections and related expenses.

b. Past Lost Wages
The trial court found that Mrs. Andrus was disabled for two years and awarded $48,452.00 for past lost wages. Defendants argue that this amount improperly includes $20,452.00, the value which the plaintiffs' economist, Dr. Michael Kurth, placed upon Mrs. Andrus' inability to perform household services for two years. Defendants also argue that the record only supports an award of $28,000.00 in past lost wages. We find merit to this contention.
The figure, "$48,452.00," appears on the first page of Dr. Kurth's report under the heading "past loss." Elsewhere in the report, the economist explained that amount included $10,226.00 for loss of "household services" for one year and $14,000.00 for loss of "potential earnings" for one year. Those two figures were then doubled to reach a value for two years past economic loss. In written reasons for judgment, the trial court stated that it was awarding $48,452.00 for "approximately two years of wage loss." We agree with the defendants that the record does not support such a high award for past lost wages.
Mrs. Andrus was unemployed at the time of the accident. She was a full time student at Sowela Institute in Lake Charles; the accident occurred three weeks short of her graduation from the word processing curriculum. One of her teachers testified that Mrs. Andrus was a motivated "self starter," the type of student that is usually placed upon graduation. A representative from a company where Mrs. Andrus had interviewed testified that Mrs. Andrus was next in line for a job but that Mrs. Andrus was no longer interested in the position because of her injuries in an accident. Dr. Kurth testified that at a word processing position Mrs. Andrus could earn $14,000.00 annually in wages and fringe benefits. We find that the highest amount for two years wage loss that could have been awarded is $28,000.00. Accordingly, the award for past economic loss is reduced to this amount. Whether the plaintiffs are entitled to an award for loss of household services is discussed under "Loss of Consortium."

c. Future Economic Loss
The trial court declined to award a sum for future lost wages, finding that Mrs. Andrus was disabled only through the date of trial. We have already discussed why we found error in the trial court's assessment of *1228 Mrs. Andrus' condition as of that date. The two physicians who had most recently examined her (one at the request of the defendants) found objective signs of injury from which they concluded that she was disabled and in need of further medical care. Under these circumstances, we find that an award of future lost wages is appropriate.
We have determined that Mrs. Andrus is entitled to complete the series of five injections that was started by Dr. Loubser. The two injections that Mrs. Andrus had previously underwent were administered approximately at four month intervals. We find that the record supports an award of future lost wages for one year, the treatment period for the three remaining injections. Any award for future disability beyond one year would be speculative, considering evidence in the record that Mrs. Andrus was responding to the treatments.
The plaintiffs' economist, Dr. Michael Kurth, based his calculations for future lost wages on the assumption that Mrs. Andrus' salary, after two years of employment, would increase from $14,000.00 to $20,000.00 annually. We can find no basis for such an assumption. Accordingly, we will accept the calculations submitted by the defendants' economist, Dr. Charles Bettinger, who estimated a future wage loss for one year, discounted at present dollars, to be $13,732.00. Mrs. Andrus is entitled to an award for future lost wages in this amount.

GENERAL DAMAGES
The trial court awarded a lump sum of $20,000.00 to compensate Mrs. Andrus for two years of pain and suffering and past medical expenses, which were stipulated at $9,405.00. In light of Dr. Weisberg's statement that Mrs. Andrus' symptoms had been treated appropriately, we find that she is entitled to recover the entirety of her past medical expenses. Subtracting the amount of past medicals from the total award, we must now determine whether $10,595.00 is adequate to compensate Mrs. Andrus for her pain and suffering.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive. Reck v. Stevens, 373 So.2d 498 (La.1979).
Mrs. Andrus' injuries are well documented in the record. Although her diagnostic testing was essentially negative, with the exception of a disc protrusion at L5-S1, her chronic complaints of pain were supported by objective evidence of a soft tissue injury, as each of her treating physicians testified. The trial court found that Mrs. Andrus had proved a soft tissue injury that persisted for approximately two years with related symptoms of headaches and involuntary contractions of the hands. We find that an award of only $10,595.00 in general damages for a chronic injury lasting two years is abusively low; our finding that Mrs. Andrus would be disabled for at least an additional year convinces us that the award must be increased.
In Friedmann v. Landa, 573 So.2d 1255 (La.App. 4th Cir.1991), the court upheld a $35,000.00 award for pain and suffering under similar facts. The plaintiff in Friedmann suffered from chronic pain and spasm for two years after the accident and was treated with steroid injections. In ANMAC Foundation v. St. Patrick Hospital, 594 So.2d 951 (La.App. 3d Cir.1992), an award of approximately $27,000.00 in general damages for an injury persisting for three years was upheld. Perhaps one of the highest awards for such injuries is found in Ferguson v. Village of Dry Prong, 580 So.2d 1015 (La. App. 3d Cir.), writ denied, 585 So.2d 570 (La.1991) (with Judge Guidry dissenting), where the plaintiff with pre-existing scoliosis was awarded $75,000.00 for a cervical and lumbar strain that persisted two years.
Mrs. Andrus has produced a detailed medical record which supports her claim of a chronic soft tissue injury. Her congenital deformity and pre-existing scoliosis made her more susceptible to a back injury. The trial court was convinced that Mrs. Andrus was totally disabled for at least two years; we have found that her condition has not improved *1229 and that she is entitled to further treatment for one additional year. We find the lowest amount the trial court could have awarded for Mrs. Andrus' general damages is $30,000.00.

LOSS OF CONSORTIUM
The plaintiffs next argue that the $1,500.00 awarded to Mr. Andrus for loss of consortium is inadequate. The defendants maintain that the award is within the trial court's discretion and further argue that the Andruses are not entitled to compensation for Mrs. Andrus' inability to perform household services because the plaintiffs did not incur any expenses because of this loss.
In Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3d Cir.1986), we affirmed the denial of an award for loss of material services because the plaintiffs had not incurred any expenses in replacing these services. We held that, at best, all the plaintiffs proved was a potential loss or the possibility of a loss. In Deville v. K-Mart Corp., 498 So.2d 1122 (La.App. 3d Cir.1986), and in Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3d Cir.1988), we permitted the plaintiff to recover the actual cost incurred in hiring a maid as a separate item of special damages, in addition to a general damage award for "loss of consortium."
The above jurisprudence indicates that recovery for loss of household services is an item of special damages, requiring proof of a pecuniary loss. However, jurisprudence has also recognized the detrimental effect that one spouse's inability to perform household services can have on a marital relationship and has considered this factor in awarding damages for loss of consortium, even in the absence of pecuniary loss. For example, in Sharp v. Metropolitan Property and Liability, Ins. Co., 478 So.2d 724 (La.App. 3d Cir.1985), the court considered that "Mr. Sharp was required to do all of the cooking and household work" during his wife's recuperation. In Miller v. Atlantic Richfield Co., 499 So.2d 1095 (La.App. 3d Cir.), writ denied, 501 So.2d 198 (La.1986), one consideration in affirming the wife's loss of consortium award was that her husband was "unable to perform all of his regular chores around the home and their farm." In Smith v. Winn-Dixie Louisiana, Inc., 574 So.2d 514 (La. App. 3d Cir.1991), the husband was allowed to recover for "his loss of Mrs. Smith's services, which he performed in her stead."
Because the Andruses have not shown that they incurred any expenses as a result of Mrs. Andrus' inability to perform household services, the plaintiffs are not entitled to an award for the value of the services as an element of economic loss. However, the effect that Mrs. Andrus' incapacity has had upon the couple's relationship is certainly relevant in determining a proper award for Mr. Andrus' loss of consortium.
Mrs. Andrus was unable to perform her regular household duties during the two years after the accident. Although friends and relatives helped with this loss, Mr. Andrus assumed many household responsibilities such as cooking, washing dishes and grocery shopping. Additionally, Mr. Andrus had to use his vacation time with his job to drive Mrs. Andrus to Houston for medical treatment. Mrs. Andrus no longer sleeps in the same bedroom as her husband because she is more comfortable in a bed of her own. Mr. Andrus described their sexual relations as "few and far between."
We agree with the plaintiffs that the trial court abused its discretion in awarding only $1,500.00 for loss of consortium. See Smith and Morris, supra, awarding $10,000.00 for this element of damages. We find the lowest amount the trial court could have awarded for Mr. Andrus' loss of consortium is $7,500.00.

DECREE
For the above reasons, the judgment in favor of plaintiffs, Ernestine and Curtis Andrus, is affirmed, but is amended as follows:

To Mrs. Andrus
Past lost wages $28,000.00
Future lost wages 13,732.00
Past medical expenses 9,405.00
Future medical expenses 3,000.00
General damages 30,000.00
 __________
 $84,137.00
To Mr. Andrus
 Loss of consortium $ 7,500.00
 __________
Total: $91,637.00

*1230 Costs of this appeal are assessed to the defendants, Roger Board and the City of Lake Charles.
AFFIRMED AS AMENDED.