750 So.2d 1186 (2000)
Jodi M. MARCUM and Daniel A. Marcum, Plaintiffs-Appellants,
v.
Carey S. JOHNSTON and Allstate Insurance Company, In Solido, Defendants-Appellees.
No. 32,634-CA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2000.
*1187 John F. Frederickson, Shreveport, Counsel for Appellants.
Rice & Kendig By M. Carl Rice William F. Kendig, Jr., Rountree, Cox, Guin & Achee, Billy J. Guin, Jr., Shreveport, Counsel for By Appellees.
Before STEWART, GASKINS and PEATROSS, JJ.
STEWART, J.,
At issue is whether the trial court erred in awarding only $5,500 in general damages to Jodi Marcum for soft tissue injuries sustained in a rear-end collision and in denying Daniel Marcum's claim for loss of consortium damages. We affirm.

FACTS
On July 8, 1996, Jodi Marcum ("Marcum") was involved in an automobile accident while driving on Olive Street in Shreveport, Louisiana. Marcum's 1988 Ford Escort was hit from behind by a vehicle driven by Carey Johnston. The impact forced Marcum's vehicle into the vehicle in front of it. Marcum exited her vehicle to check on the other drivers. After completion of the police investigation, Marcum drove her vehicle home to have lunch with her husband. As a result of the accident, the trunk of the vehicle would not close properly and the radiator leaked fluid.
Marcum returned to work that afternoon at the office of Dr. McIntyre Bridges where she was employed as a medical assistant. During the afternoon, Marcum began to experience some soreness and tightness in her neck and lower back. However, surgical wounds healing from an abdominoplasty that Marcum underwent ten days prior to the accident were not disrupted. The tightness in her back increased that evening, so she took some Tylenol before going to sleep. When Marcum awoke the next morning, she could not get out of bed without help from her husband. She took a hot shower, worked the entire day, and then went to the emergency room at Willis-Knighton that evening. The medical records from the emergency room visit on July 9, 1995, show that Marcum complained of pain in her neck, right shoulder, and lower back. The x-rays taken were negative. Examination of Marcum detected no muscle spasm. Marcum was diagnosed with acute cervical strain, given Soma for pain, and released.
Marcum sought chiropractic treatment three months later from Mohammed Shamsabady, D.C., for recurring lower back pain. Dr. Shamsabady's records show that Marcum complained of headaches, lower back pain and stiffness, muscle pain, and insomnia. He found tenderness in her lumbar area accompanied by restricted range of motion in that same area. Diagnosis included lumbar myofascitis and myospasms, lumbar neuritis, acute/moderate lumbar sprain/strain, *1188 sciatica, and discogenic syndrome. Treatments included specific manipulative corrections, application of moist heat, inter-segmental traction, deep muscle massage, cryotherapy, and electric muscle stimulation. Marcum saw Dr. Shamsabady seven times in October and one time in November. She was released from his care as of December 23, 1996, upon having reached maximum medical improvement.
Approximately ten months later, Marcum sought treatment from Dr. Baer Rambach, an orthopedic surgeon, for her continuing back pain. Marcum had been experiencing low back pain with sharp, shooting pains down her right leg. She also began to notice intermittent tingling and numbness in her right arm and neck accompanied by a lump on the back of her neck that seemed to fluctuate in size. Marcum reported these complaints to Dr. Rambach on her first visit to him on September 15, 1997. Dr. Rambach's examination revealed some tenderness in the cervical and lumbar regions of her spine, but no muscle spasm and no significant restriction of motion. The x-rays produced negative results. Dr. Rambach's diagnosis was that Marcum sustained "significant myoligamentous and myofascial sprains and strains to the cervical spine and lumbar and lumbosacral regions of the spine." He recommended a limited period of physical therapy and home exercises to be done at least twice per day. He provided support aids for sitting and sleeping and recommended mild medications such as Advil or Aleve. Dr. Rambach also noted that it is not unusual to experience ongoing problems from one year to eighteen months after an accident.
At a follow-up visit on November 17, 1997, Marcum still reported discomfort in her lower back, but had no complaints of neck pain. Dr. Rambach believed that she was improving and that the lower back discomfort should gradually dissipate. He expected maximum medical improvement over the next several weeks with no residual problems. Marcum returned to Dr. Rambach on March 12, 1998, again complaining of lower back pain. Dr. Rambach noted some soreness, tenderness, and pain with extreme motion of the lumbosacral spine. He also noted that Marcum had not availed herself of any consistent physical therapy and suggested that she would notice definite improvement if she attended physical therapy three times a week for four weeks.
Marcum saw Dr. Rambach for the last time on August 17, 1998. She reported intermittent problems with her neck and lower back depending on her activity level at work, difficulty sleeping, and concerns about the lump on her neck. Dr. Rambach noted some tenderness in the lumbosacral spine and pain associated with extremes of motion. With regard to the neck lump reported by Marcum, Dr. Rambach found some asymmetry or induration of musculature that appeared more pronounced on the right side of the posterior aspect of the cervical spine. He believed that the lump could be permanent scarring from the injuries Marcum sustained in the accident. He urged Marcum to continue an exercise program and noted that she could be symptomatic indefinitely. At his deposition taken on August 18, 1998, the day after his last appointment with Marcum, Dr. Rambach stated that he anticipates a fairly good prognosis for Marcum. He described her ongoing problems as a soft tissue injury and opined that physical therapy would help. However, he noted that Marcum is unable to avail herself of physical therapy due to her work schedule, but that she is able to exercise at home. Dr. Rambach's deposition was admitted into evidence at trial in lieu of live testimony.
After her initial visit with Dr. Rambach, Marcum attended three physical therapy sessions then discontinued the treatment due to difficulties in arranging the appointments around her work schedule. She did continue some exercises at home, but quit doing those that seemed to increase her pain. Marcum did not miss any work due to pain from her injuries. She explained that she felt a responsibility *1189 to be there for the doctor and patients. She generally treated her symptoms with Tylenol, ice packs, heating pads, Flex-All, and Bengay. Marcum explained that her injuries are aggravated by the level of her activity at work and by the weather. With regard to the effect of the pain on her activities, Marcum stated that the pain interferes with her sleep approximately three to four nights per month causing her to be moody on days when she does not get eight hours of sleep. The pain also interferes with her activities approximately five to six times per month. Marcum reported that she is able to care for her home but that her husband helped with activities such as lifting heavy laundry and carrying the garbage outside. However, Daniel Marcum, a member of the United States Air Force, was transferred to Korea for one year beginning in September 1997. While he was away, Marcum took care of the home without assistance. With regard to the impact of her injuries on her personal relationships, Marcum reported that she must now limit activities such as football and baseball with her two sons. For instance, she now only throws the ball for them and does not kick or punt. She also reported that at times she was not able to snuggle with her husband due to back pain and that this situation created some stress.
The only issues at trial of this matter were damages related to Marcum's injury and her husband's loss of consortium claim. The defendant, Allstate Insurance Company, stipulated to liability. The various medical records pertaining to Marcum's injury and the deposition of Dr. Rambach were admitted into evidence. Only Marcum and her husband testified. Based upon the severity of her injuries, the continuity and nature of her medical treatment, her compliance with prescribed courses of treatment recommended by Dr. Rambach, and the duration of her symptoms and complaints, the trial court awarded Marcum $5,500 in general damages and recovery of her special damages for medical expenses. The trial court denied Daniel Marcum's claim for loss of consortium damages on the basis that his claim did not rise to the level required to support an award for loss of consortium. This appeal followed.

DISCUSSION

General Damages
Marcum first contends that the trial court abused its discretion in awarding only $5,500 in general damages. Marcum asserts that because she sustained soft tissue injuries in the accident which continue to interfere with her activities of daily living, including work, recreation, leisure, and her physical relationship with her husband, a reasonable award of general damages would be $35,000.
In assessing damages in cases of offenses, quasi-offenses, and quasi-contracts, much discretion is left to the trier of fact. La. C.C. art. 2324.1. Before an appellate court may disturb an award of damages, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Manuel v. State Farm Mut. Auto. Co., 30,765 (La.App.2d Cir.8/19/98), 717 So.2d 277. The appellate court's function is not to determine whether a different award may have been more appropriate, but whether the trial court's award is reasonably supported by the record and justifiable inferences therefrom. Summarell v. Ross, 27,160 (La.App.2d Cir.8/23/95), 660 So.2d 112. In determining whether an award of damages is inadequate, the appellate court must view the evidence in the light most favorable to the defendant. Manuel, supra; Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.1993), writ denied, 619 So.2d 547 (La.1993). Only if an articulated analysis of the facts discloses an abuse of discretion is resort to prior awards in similar cases proper. Day v. *1190 Silver Oak Cas., Inc., 28,566 (La.App.2d Cir.8/21/96), 679 So.2d 486.
In this matter, Marcum sustained soft tissue injuries to her neck and lower back in a rear-end collision. Marcum did not require medical treatment at the accident scene and was able to drive away from the accident and return to work after having lunch with her husband. She began experiencing some soreness that same afternoon, and the pain increased that evening. Still, Marcum was able to work the next day. After work, she sought medical attention at an emergency room to find out whether there was any serious injury. She was diagnosed with acute cervical strain even though the x-rays were negative and no muscle spasm was detected. Because of continuing problems, particularly with her lower back, Marcum sought chiropractic treatment in October 1996, approximately three months after the accident. After eight visits to Dr. Shamsabady, Marcum was released upon reaching maximum medical improvement. Due to continuing intermittent neck and back pains, Marcum sought treatment ten months later from an orthopedic surgeon, Dr. Rambach. Again, x-rays were negative and no muscle spasm was detected. Dr. Rambach diagnosed Marcum as suffering from cervical and lumbar sprains and strains. Recommended treatments included physical therapy, home exercises, sitting and sleeping aids, and mild non-prescription pain medications. Marcum attended three physical therapy sessions and then returned to Dr. Rambach three more times over the course of the next twelve months still complaining of intermittent back pains and neck pains, including the formation of a lump on the back of her neck. Dr. Rambach provided no further treatment other than to recommend continuation of physical therapy and exercise. Although Dr. Rambach opined that Marcum could be symptomatic for an indefinite period, he anticipated a fairly good prognosis for her.
The facts show that while Marcum has continued to experience intermittent lower back and neck pain, she has not had to undergo excessive or invasive treatments. She has not had to take prescribed pain medication; rather, she is able to treat herself with nonprescription medications as needed. She has not had to endure injections or surgery. Evidence suggests that even though physical therapy was recommended to relieve her symptoms, Marcum attended only three physical therapy sessions and did not continue therapy on a regular basis. While we do not fault Marcum for foregoing physical therapy for work, her willingness to forego physical therapy is a factor which is suggestive of the severity of her injuries. Although there is some evidence indicating that her injuries have impacted her daily life and relationship with her husband, such evidence is scanty. Marcum has continued to work despite her injuries. There is no evidence that she has had to alter her work activities in any way. Her testimony suggests that she has had to alter some activities with her sons, such as the manner in which she plays ball with them. Marcum testified that her husband had to take over certain domestic chores such as lifting heavy laundry and placing the garbage outside. However, she did these things herself while her husband spent a year stationed in Korea.
In support of her claim that her general damages should be significantly increased, Marcum relies primarily on two cases. In Carter v. Brookshire Grocery, Co., 29,166 (La.App.2d Cir.2/26/97), 690 So.2d 933, review denied, 97-0782 (La.5/1/97), 693 So.2d 734, we affirmed a $25,000 award of general damages. The plaintiff suffered soft tissue injuries to her left hip, left shoulder, left wrist, and neck in a "slip and fall" accident. The plaintiff's injuries were initially quite painful and restricted her work and recreational activities for a time. She was prescribed anti-inflammatory medication and given injections. It was also possible that future surgery would be required. In Andrus v. Board, 626 So.2d 1224 (La.App. 3d Cir.1993), the Third Circuit increased a $20,000 general damages *1191 award to $30,000 for two years of pain and suffering from cervical and lumbar soft tissue injuries with accompanying headaches and involuntary contractions of the hands. The plaintiff had pre-existing congenital deformity and scoliosis which made her more susceptible to a back injury. She was given injections and prescribed medication for pain relief. The plaintiff's claim was supported by a detailed medical record and the court found that her condition had not improved.
The plaintiffs in both Carter, supra, and Andrus, supra, sustained more significant soft tissue injuries requiring more intensive medical treatment than those sustained by Marcum. Even though Marcum was still complaining of lingering pain almost two years after the accident, she was determined by Dr. Rambach to have a good prognosis, was able to perform her daily activities, and was not under regular medical care. Considering the particular facts and circumstances of this case and viewing the evidence in the light most favorable to the defendant, we cannot say that the trial court abused its broad discretion in its award of general damages.[1]

Loss of Consortium
Marcum also contends that the trial court erred in rejecting her husband's loss of consortium claim. Marcum and her husband assert that her injuries impacted their relationship even though he was away for a year on overseas duty.
In deliberations concerning loss of consortium, the trier of fact is given great discretion. McCrocklin v. Saterfiel, 31,144 (La.App.2d Cir.10/28/98), 720 So.2d 1258, writ denied, 98-2979 (La.1/29/99), 736 So.2d 837; Miller v. Keal, 29,564 (La. App.2d Cir.5/7/97), 694 So.2d 569, writ denied, 97-1751 (La.10/13/97), 703 So.2d 620. Entitlement to loss of consortium damages is a question of fact which will not be reversed in the absence of manifest error. McCrocklin, supra; Miller, supra. The elements of a loss of consortium claim include loss of love and affection, loss of companionship, impairment of sexual relations, loss of material services, loss of support, loss of aid and assistance, and loss of felicity. McCrocklin, supra; O'Riley v. City of Shreveport, 30,107 (La.App.2d Cir.1/23/98), 706 So.2d 213, writ denied, 98-0752 (La.5/1/98), 718 So.2d 418.
Marcum's testimony established that she was moody at times when she missed a full eight hours of sleep due to pain, that her husband did assist with chores such as heavy lifting before his overseas assignment, and that her back pain caused her to push him away and avoid snuggling at times. Daniel Marcum testified that even though he and his wife shared responsibilities at home since both worked, he had to do more things around the house than he did before the accident. He also testified that his wife was cranky and irritable at times and stated that she "may want to be together, depending on how work went, we may not be able to." He also testified that he can no longer touch the back of her neck like he could before the accident.
In light of the scant evidence of loss of consortium, we do not believe the trial court erred in denying Daniel Marcum's claim. While Daniel Marcum did assist in some household chores prior to leaving for Korea, his wife was able to perform the same chores while he was away. Also, the record contains only vague evidence of how *1192 Marcum's injuries impacted their relationship. The record actually suggests that there was minimal interference and disruption in their lives due to Marcum's injuries. Accordingly, we find no manifest error in the denial of this claim.

CONCLUSION
For the reasons discussed, we affirm the trial court's judgment at appellants' cost.
AFFIRMED.
NOTES
[1] For similar awards see Howard v. Derokey, 98-0893 (La.App. 4th Cir. 2/10/99), 729 So.2d 654; Manuel, supra, and cases cited therein; Marie v. John Deere Ins. Co., 96-1288 (La. App. 1st Cir. 3/27/97), 691 So.2d 1327; Smith v. Midland Risk Ins. Co., 29,793 (La.App.2d Cir.9/24/97), 699 So.2d 1192; Rebstock v. Cheramie, 95-1388 (La.App. 1st Cir. 2/23/96), 673 So.2d 618; Johnson v. Automotive Casualty Ins. Co., 27,362 (La.App.2d Cir.9/27/95), 661 So.2d 633; Evans v. Kilbert, 27,101 (La. App.2d Cir.8/23/95), 660 So.2d 167.