CLARENCE E. McMANUS, Judge.
| {¡On October 18, 2006, Nancy Buckheis-ter, filed suit for damages arising from injuries allegedly received as a result of a car accident. Plaintiffs husband, Richard, was also named as a plaintiff and he sought damages for loss of consortium. Named as defendants in the suit were Kevon Thompson, driver of the other vehicle, his employer United States Environmental Services, L.L.C. (hereinafter “USES”), and their insurer The Gray Insurance Company. Prior to trial, the parties stipulated that Thompson was the cause of the accident, that he was in the course and scope of his employment, that USES was liable for damages and that there was a policy of insurance issued by The Gray Insurance Company which covered the accident. Left as issues for trial were medical causation and the extent of the damages incurred. The matter was heard at a three day trial before a jury and at its conclusion the jury found that Mrs. Buckheister suffered damages as a result of the accident. The jury awarded Mrs. Buckheister the amounts of 1,-⅝$63,000.00 for past medical expenses, $24,000.00 for future medical expenses, $2,700.00 for past lost wages, $2,700.00 for future lost wages, $50,000.00 for general damages, and $10,000.00 for loss of enjoyment of life, for a total damage award of $153,000.00. The jury further found that Mr. Buckheister did not suffer a loss of consortium as a result of his wife’s injuries, and they awarded him $0.00. On *417 June 15, 2011, in conformity with the jury verdict, the trial court rendered judgment in favor of plaintiff in the amount of $153,000.00. Thereafter, plaintiffs filed motions for judgment notwithstanding the verdict, and additur, and alternatively for new trial, alleging that the award given to Mrs. Buckheister was inadequate and that the jury erred in failing to find that Mr. Buckheister suffered damages. On September 1, 2011, the trial court denied all motions. This timely appeal followed.
FACTS
In the course of these proceedings, the defendants admitted to liability. They also admit that the driver, Kavon Thompson, was within the course and scope of his employment and had company permission to drive the vehicle, and that insurance coverage was provided by Gray Insurance Company.
The following was adduced at trial. On October 28, 2005, Mrs. Buckheister was proceeding down Lapalco Boulevard when the side of her vehicle was struck by a truck driven by Kevon Thompson. She testified that the impact occurred with sufficient force that her body was jolted and twisted. After the accident, both vehicles pulled off the roadway and into a nearby parking lot, and she called both the police and her husband. After the accident was investigated, she went home. At that time, she felt stiff and sore. The next day, and into the next week, she felt increasing neck pain, prompting her to seek medical treatment from her internist Dr. Elizabeth Cressey.
|4Prior to the accident at issue, Mrs. Buckheister suffered from various medical conditions, none of which she said related to the neck pain from the accident. Her medical issues were Wolff-Parkinson-White syndrome, (an electrical problem that causes an irregular heartbeat), a thyroid condition, gastroparesis (food does not digest), lower back pain at the tailbone area, fibromyalgia, and carpal tunnel syndrome.
On November 1, 2005, Mrs. Buckheister first told Dr. Cressey of the automobile accident and her neck pain. At that time, Dr. Cressey did not prescribe any medications or order any tests. Mrs. Buckheis-ter returned to Dr. Cressey two weeks later because her neck pain was increasing. At that time, Dr. Cressey ordered an X-ray and prescribed an anti-inflammatory.
Despite treatment, Mrs. Buckheister’s condition worsened. She was not getting relief from the medications she was taking, and there were some medications that she could not take because of her heart arrhythmia. According to Mrs. Buckheister, in the beginning of 2006, the pain in her neck was “getting out of control”, and radiating from the neck into her shoulder and down her arm.
Dr. Cressey testified by video deposition. She stated that she treated Mrs. Buckheister from September 1995 until she (Dr. Cressey) moved to Virginia in March of 2006. Throughout that time period, Dr. Cressey treated Mrs. Buckheister for mild illnesses and her chronic fibro-myalgia, for which she was prescribed Paxil (an anti-depressant). According to Dr. Cressey, Mrs. Buckheister’s last complaint of neck pain prior to the accident was several years earlier, in April of 2001. At that time she was diagnosed with cervi-calgia (neck strain). No diagnostic tests were conducted and no medications were prescribed. The condition resolved itself.
| sDr. Cressey stated that on the November 1, 2005 visit, her notes did not reflect any complaint of neck pain. However, she also admitted that she might not have noted it if there was no treatment prescribed. On November 11, 2005, Mrs. *418 Buckheister told her of the car accident and told her about the neck pain. Her examination revealed limited range of motion of the neck and tenderness in the cervical spine muscle. A neurological examination was normal. The X-ray showed mild degenerative changes in the lower cervical spine, loss of normal lordosis and some degenerative disc disease in C5-6 and C6-7. Dr. Cressey stated that degenerative disc disease can be symptomatic or asymptomatic, and that trauma such as an accident can cause a previously asymptomatic condition to become symptomatic.
Dr. Cressey stated that on Mrs. Buck-heister’s next visit of January 13, 2006, she was withdrawn, sad and anxious, and complained of disruption of sleep. Her prescriptions were renewed at that time. Dr. Cressey admitted that her notes did not contain any mention of neck pain, but stated that there would have been no need to renew the prescriptions if Mrs. Buckheis-ter was not still in pain.
Dr. Cressey saw Mrs. Buckheister twice more, for conditions unrelated to the car accident. In late March, Mrs. Buckheister telephoned and asked for a referral to see an orthopedist for neck pain. Shortly thereafter, Dr. Cressey relocated. In her deposition, Dr. Cressey opined that Mrs. Buckheister’s complaints of pain were legitimate and were caused by the automobile accident.
Mrs. Buckheister testified that in March or April of 2006, she had her first appointment with Dr. Ralph Katz, an orthopedic surgeon at Westside Orthopedic Clinic. Dr. Katz testified via video deposition that he first saw Mrs. Buckheister on April 2, 2006. At that time, she complained of constant neck pain and arm pain with numbness in the fingers, which he described as a radicular complaint. She | (¡related that she had been in a car accident in October of 2005. His notes also indicate that she had a long history of neck pain, which had been intermittent for years, but had gotten worse since the accident. However, both Mr. and Ms. Buck-heister testified that Ms. Buckheister did not have a history of neck pain before the accident. She rated her pain as a 7 on a scale of 1 to 10. He had no notation of her having fibromyalgia.
Dr. Katz’s exam of her neck revealed some tenderness with no spasms, no atrophy, and discomfort with range of motions. She exhibited discomfort in the para cervical musculature, weakness at the C7 root, and some symptoms of carpal tunnel and or irritation of the ulnar neuritis. At that time, he prescribed muscle relaxers, pain and anti-inflammatory medication, and a steroid injection.
An MRI was conducted which showed herniation of C4-5, C5-6, and C6-7 and cervical spondylosis. There was impingement on the C7 root, which was more prominent on the left. An EMG and nerve conduction study revealed C6-7 cervical radiculopathy and left arm carpal tunnel syndrome.
Mrs. Buckheister received injections twice in May, in August and in September. In September of 2006, she returned to Dr. Katz, still with neck pain and recurrent arm pain. He recommended selective nerve blocks, and told her that if the blocks did not work, her next option would be surgery. Ms. Buckheister did not follow up with him. In his deposition, Dr. Katz stated that he believed her complaints of pain were genuine.
Mrs. Buckheister testified that the injections gave her some relief, but it was not long-term. When Dr. Katz mentioned surgery, she sought a second opinion.
On October 23, 2006, Mrs. Buckheister saw Dr. Truax, a neurologist. He performed another EMG and sent her to be *419 evaluated for potential neurosurgery by 17Pr. Steck. Dr. Steck recommended that she continue with conservative care, and referred her to Dr. Rynick for treatment.
Dr. Stephen Rynick testified via video deposition. He stated that he was a member of the Culicchia Medical Group and that he specialized in physical medicine and rehabilitation. His specialty involves muscle and nerve, bone and joint from a functional perspective, trying to reduce pain and increase function. He further testified that he treats chronic pain patients.
Dr. Rynick first treated Mrs. Buckheis-ter on November 29, 2006. He reviewed her MRI and EMG and administered a cervical epidural steroid injection, with the intent of reducing irritability of the nerve and inflammation. A second injection was administered on April 23, 2007, which eased the radicular pain into the arm, but not the neck pain. On April 30, 2007, he administered facet joint injections. On her visit of June 7, 2007, Mrs. Buckheister reported excellent improvement with the facet joint injections, however the pain returned. On July 25, 2007, he performed a cervical facet rhizotomy, which is a procedure that involves several injections to burn the nerve so that it cannot carry pain signals. Rhizotomies were performed in November of 2007, August of 2008, March of 2010 and January of 2011. At the time of trial, a rhizotomy was scheduled.
In his deposition, Dr. Rynick testified that in his opinion, Mrs. Buckheister’s symptoms were caused by the automobile accident. He further opined that her condition was likely permanent, and would require procedures every 6 months to one year. He also stated that Mrs. Buckheis-ter is not a candidate for surgery, and that the treatments administered would not be effective in the treatment of fibromyalgia.
| sDuring the interim, Mrs. Buckheister was admitted to the hospital in May of 2009 for neck pain. Her stay lasted 3-4 days. She testified that she was given morphine but it had little effect.
Dr. James Todd, an orthopedist, performed an Independent Medical Examination. He reviewed Mrs. Buckheister’s history, medical records provided to him, and his own examination of her and stated that he found no neurocompression on any of the nerves, and therefore she was not a candidate for surgery. He opined that she was not suffering from radiculopathy, since this would have affected her strength as well as exhibiting tingling symptoms. He further stated that the most likely and common method for nerves to compress is from a degenerative process where the discs lose fluid and the spine collapses. In his opinion, Mrs. Buckheister was suffering from a degenerative cervical spondylo-sis or arthritis with a facet condition that was pre-existing. He concluded that Mrs. Buckheister was injured in the accident, but that her injury was short-term and had resolved itself by the time of trial. Dr. Todd found that no future care was warranted.
At trial it was established that Mrs. Buckheister’s past medical expenses were $62,725.00. Dan Cliffe, a certified public accountant specializing in economic analysis and the determination of potential loss, evaluated the present value of Mrs. Buck-heister’s future medical care, based on a factual scenario of 1-2 office visits, 1-2 rhizotomies and 1-2 epidural steroid injections for the rest of her life, based on her life expectancy of 22.85 years. He opined that the present value of her future medical care ranged from a low point of $106,515.65 to a high point of $147,604.82.
Mrs. Buckheister testified that, at the time of trial, her pain varied on a daily basis from a 4 to a 10 on a scale of 1 to 10, *420 and that she never had a “pain free” | flday. She stated that the pain affected her daily life in that it caused her to miss days at work and she often had to “back out” of events she had planned. Sometimes when she did attend planned events, by the event’s end she would be in so much pain that she would regret having attended. Mrs. Buekheister stated that she no longer can lift heavy objects, do any overhead activity, or turn her head without causing pain. She can no longer tend to her garden. She had difficulty doing housework and must rely on her husband. She further stated that while the intimacy in her marriage has been affected, they have not suffered any marital discourse. Mrs. Buekheister further admitted that there had been limitations to her activities prior to the accident because of her fibromyal-gia; however that condition was well controlled by prescribed medicine (Paxil). She further testified that the medical procedures that she would undergo, especially the rhizotomies, were extremely painful.
Mr. Richard Buekheister, plaintiffs husband, testified that he works at the former Avondale Shipyards, and that he splits his time between Avondale and Pascagoula, Mississippi. Because he must spend part of his working time in Pascagoula, he worries about his wife when he is not home. He stated that she worries about the “load” that she burdens him with, and that she cannot always participate in events with him. He stated that they were a happily married couple.
ANALYSIS
In this appeal, plaintiffs allege that the jury committed manifest error in their findings of damages. They contend that the jury erred in its award for future damages; its award for general damages; its award for loss of enjoyment of life and in failing to award damages for Richard Buckheister’s loss of consortium claim.
Plaintiffs also contend that the trial court erred in denying their motions for JNOV and/or additur or, in the alternative, new trial.
| inOur standard of review in this matter is governed by the following:
A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Bonin v. Ferrellgas, 03-3024, p. 6-7 (La.7/2/04), 877 So.2d 89, 94-95; Stobart v. State through Dept, of Transp. and Development, 617 So.2d 880, 882 (La.1993).
Allerton v. Broussard, 10-2071 (La.12/10/10), 50 So.3d 145, 146-147 reconsideration denied, 10-2071 (La.1/28/11), 56 So.3d 974.
In addition, plaintiffs also argue that the trial court erred in denying their post-trial motions for JNOV and/or additur and, in the alternative, new trial.
JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and *421 weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. This rigorous standard is based upon the principle that when there is a jury, the jury is the trier of fact.
Joseph v. Broussard Rice Mill, Inc., 00-0628, (La.10/30/00), 772 So.2d 94, 99.
Plaintiffs also argue that the trial court erred in denying the motions for additur or alternatively for new trial.
The Louisiana Code of Civil Procedure provides a procedure for additur or re-mittitur of the verdict or judgment in cases tried before a jury when the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only. See LSA-C.C.P. art. 1814. This procedure is connected with the procedures concerning new trials. Miller v. Chicago Insurance Company, 320 So.2d 134, 136 (La.1975); see LSA-C.C.P. arts. 1972,1973.
Guidry v. Millers Cas. Ins. Co., 822 So.2d 675, 2001-0001 (La.App. 1 Cir. 6/21/02).
 | uPlaintiffs challenge several, but not all, of the jury’s awards of damages. First they allege that the jury erred in its award of future medical expenses. It appears to be plaintiffs’ argument that because the jury awarded all of plaintiffs past medical expenses incurred through treatment with Dr. Rynick, the jury was obligated to awarded damages for all of the future medical procedures that Dr. Rynick concluded would be necessary.
The cost of future medical treatment and expenses cannot be precisely measured; however, the plaintiff must still
establish future medical expenses with some degree of certainty through medical testimony that such expenses are indicated and their probable cost. Locke v. Young, 42,703 (La.App.2d Cir.12/12/07), 973 So.2d 831; Sepulvado v. Turner, 37,912 (La.App.2d Cir.12/10/03), 862 So.2d 457, writ denied, 04-0089 (La.3/19/04), 869 So.2d 855; Lewis v. State Farm Ins. Co., 41,527 (La.App.2d Cir.12/27/06), 946 So.2d 708.
Davis v. Foremost Dairies, 45,835 (La.App. 2 Cir. 2/16/11), 58 So.3d 977, 990 writ denied, 11-0568 (La.4/25/11), 62 So.3d 97 and 11-0538 (La.4/25/11), 62 So.3d 98.
The jury herein found that further medical treatment was warranted, since they awarded a sum of money for that treatment. The only testimony presented to prove or disprove the value of that award was the testimony of Mr. Cliffe. His testimony was that the lowest value of the future medicals that Mrs. Buckheister would likely incur was $106,515.65. This testimony was not refuted by the defense. Accordingly, the jury committed manifest error in awarding only $24,000.00 in future medical expenses and we amend thé judgment to award to Mrs. Buckheister $106,515.65 for her future medical expenses.
Plaintiffs next argue that the award of general damages was inadequate. As this Court summarized in Mixter v. Wilson, 10-464 (La.App.5 Cir.12/14/10), 54 So.3d 1164: 1168.
General damages are those that may not be fixed with pecuniary exactitude; instead, they “involve mental or physical pain or suffering, inconvenience, |12the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Duncan v. Kansas City S. Ry. Co., 00-0066 *422 (La.10/80/00), 773 So.2d 670, 682-83 (quoting Keeth v. Dep’t. of Pub. Safety & Tramp., 618 So.2d 1154,1160 (La.App. 2 Cir.1993)). In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. La. C.C. art. 2324.1; Reck v. Stevens, 373 So.2d 498 (La.1979). The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Because discretion vested in the trial court is “great,” and even vast, an appellate court should rarely disturb an award of general damages. Id. at 1261.
It is only when the award is, in either direction, beyond that, which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, that the appellate court should increase or reduce the award. Id. The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Cone v. Nat’l Emergency Serv. Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089. Only if the reviewing court determines that the trial court has abused.its “much discretion” may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).
In this case, the jury evidently accepted that the entire medical treatment undergone by Mrs. Buekheister was related to the accident, since it awarded her the entire amount of past medical expenses. The testimony at trial reflected that Mrs. Buekheister had suffered pain for over 5 years, ranging from (as she stated) a 4 to 10 out of a possible 10, including pain so severe it required hospitalization. For the last five years, plaintiff has undergone several cervical facet blocks, rhizotomies and epidural steroid injections. Furthermore, surgery was found not to be an option for the relief of pain. Mrs. Buekheister testified that as a result of her injuries, she could no longer enjoy events that she had participated in prior to the accident, because she would either suffer pain, or fore-go the events entirely. Given this uncon-tradicted testimony, we conclude that the jury was manifestly erroneous 113in awarding only $50,000.00 for general damages and $10,000.00 for loss of enjoyment of life.
Having found that the awards are manifestly inadequate, we turn to a review of similar cases to determine the lowest appropriate award in this case.
In Hoyt v. Gray Ins. Co., 00-2517 (La.App.4 Cir.1/31/02), 809 So.2d 1076, writ denied, 02-1222 (La.6/21/02), 819 So.2d 343, the court affirmed a general damage award of $150,000.00 to a plaintiff diagnosed with C5 radiculopathy without evidence of disc herniation and a bulge at L-5, S-l which was possibly pre-existing. The court noted that these injuries were disabling injuries, having long-term implications.
In Rico v. Sewerage and Water Bd. of New Orleans, 04-2006 (La.App.4 Cir.3/8/06), 929 So.2d 143, the court affirmed an award of $150,000.00 to a plaintiff who suffered a herniated disc in his neck and who was not a candidate for surgery due to pre-existing health conditions.
In Fox v. Anderson, 05-934 (La.App.3 Cir.3/1/06), 924 So.2d 399, writ denied 06-0722 (La.6/23/06), 930 So.2d 977, the court *423 affirmed an award of $175,000.00 to a plaintiff who suffered, at the very least, an aggravation to a prior back condition for which he underwent physical therapy and a number of lumbar injections. At the time of trial Mrs. Buckheister continued to experience pain and could no longer plan out or participate in events, and he could no longer work as his job required heavy lifting.
Considering the foregoing jurisprudence, we conclude that $150,000.00 was the least amount of general damages that is appropriate in this case, and that a combined award of $175,000.00 is the lowest appropriate award for general damages and loss of enjoyment of life. Accordingly, we amend the judgment of |uthe trial court to provide for damages of $175,000.00 for general damages and loss of enjoyment of life.
Plaintiffs also argue that the jury erred in failing to award loss of consortium damages to Richard Buckheister.
In order to establish a claim for loss of consortium, a claimant must factually support the defendant’s liability, the damage suffered by the primary victim, and his or her loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 (La.App.3 Cir.11/6/96); 682 So.2d 974.
Whether a person is entitled to loss of consortium damages is a question of fact which cannot be reversed on appeal absent manifest error. Mathews v. Dousay, 96-858 (La.App.3 Cir.1/15/97); 689 So.2d 503.
Cole v. State ex rel. Dept. of Transp. & Development, 99-912 (La.App.3 Cir.12/22/99), 755 So.2d 315, 326-327 writ denied, 00-0199 (La.4/7/00), 759 So.2d 766.
In this case, although Mr. Buckheister testified that his wife’s injuries affected their lives, and that he constantly worried about her, his testimony fails to show how their lives were disrupted. The record only contains vague testimony as to how his life was impacted by the injury. Accordingly, we cannot say that the jury was manifestly erroneous in denying this claim. Compare Marcum v. Johnston, 32,634 (La.App.2 Cir.1/26/00), 750 So.2d 1186.
For the above discussed reasons, the judgment of the trial court is amended to award $175,000.00 in general damages and damages for loss of enjoyment of life, and to award $106,515.65 for future medical expenses. In all other respects, the judgment is affirmed. Costs are assessed equally between the parties.

AMENDED, AND AS AMENDED, AFFIRMED